[No. C048378. Third Dist. Apr. 4, 2005.]

WILLIAM J. KNIGHT et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
ARNOLD SCHWARZENEGGER, as Governor, etc., et al., Real Parties in
Interest.

COUNSEL

Alliance Defense Fund, Robert H. Tyler, Douglas L. Edgar; Law Offices of Andrew P. Pugno and Andrew P. Pugno for Petitioners.

Liberty Counsel, Mathew D. Staver, Rena M. Lindevaldsen and Mary McAlister for Campaign for California Families as Amicus Curiae on behalf of Petitioners.

No appearance for Respondent.

Bill Lockyer, Attorney General, Louis R. Mauro, Assistant Attorney General, Christopher E. Krueger and Kathleen A. Lynch, Deputy Attorneys General, for Real Parties in Interest Schwarzenegger et al.

Lambda Legal Defense and Education Fund, Jon W. Davidson, Jennifer C. Pizer; Law Office of David C. Codell, David C. Codell; National Center for Lesbian Rights, Shannon Minter, Courtney Joslin; ACLU Foundation of Southern California, Peter J. Eliasberg; ACLU Foundation of Northern California, Christine P. Sun, Alan L. Schlosser; ACLU Foundation of San Diego & Imperial Counties, Jordan C. Budd; ACLU Foundation, Lesbian & Gay Rights Project and James D. Esseks for Real Parties in Interest Equality California et al.

---

OPINION

**SCOTLAND, P. J.**—In March 2000, a majority of California's voters approved Proposition 22, codified in Family Code section 308.5, which states: "Only marriage between a man and a woman is valid or recognized in California." (We shall refer to this as the defense of marriage initiative or Proposition 22.)

Thereafter, the Legislature enacted Family Code section 297.5, effective on January 1, 2005, which states in part: "(a) Registered domestic partners shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, . . . as are granted to and imposed upon spouses." (We shall refer to this as the domestic partners act.)

Petitioners filed a complaint for declaratory and injunctive relief, seeking a determination that the Legislature's enactment of the domestic partners act is void because, they argued, it in effect amends Proposition 22, the defense of marriage initiative, without obtaining separate approval of the voters, which

petitioners believe was required by article II, section 10, subdivision (c), of the California Constitution. This constitutional provision states that a legislative amendment of an initiative statute "becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval." As petitioners point out, Proposition 22 did not contain a clause permitting such a result.

Ruling on the parties' motions for summary judgment, the trial judge held that (1) the domestic partners act does not amend the defense of marriage initiative and, therefore, its enactment without subsequent voter approval does not violate California's Constitution, and (2) in any event, interpreting the initiative in the manner urged by petitioners would likely violate the equal protection guarantees of our state's Constitution. Consequently, a judgment was entered denying petitioners' request to declare the domestic partners act to be void.

In December 2004, petitioners filed in this court a petition for writ of mandate, challenging the trial judge's ruling. Since the legislation would become effective on January 1, 2005, they asked us to issue an interim stay to prohibit enforcement of the contested provisions of the domestic partners act pending our decision on the merits of petitioners' writ petition. We denied the request for a stay but issued an alternative writ of mandate to address petitioners' legal challenge to the domestic partners act.

We conclude the trial judge was correct in ruling that the Legislature's enactment of the domestic partners act did not constitute an amendment of the defense of marriage initiative and, thus, that the Legislature's action without separate voter approval did not violate article II, section 10, subdivision (c) of the California Constitution.

As we will explain, the plain and unambiguous language of Proposition 22 shows that the initiative was intended only to limit the status of marriage to heterosexual couples and to prevent the recognition in California of homosexual marriages that have been, or may in the future be, legitimized by laws of other jurisdictions. The words of Proposition 22, and also its ballot pamphlet materials, do not express an intent to repeal our state's then-existing domestic partners laws or to limit the Legislature's authority to enact other legislation regulating such unions. If this were the intention of proponents of Proposition 22, the electorate was not given the opportunity to vote on that undisclosed objective, and courts are precluded from interpreting Proposition 22 in a manner that was not presented to the voters.

Contrary to petitioners' suggestion, the Legislature has not created a "marriage" by another name or granted domestic partners a status equivalent to married spouses. We shall recount in the discussion, *post*, the numerous statutory dissimilarities between the two types of unions, which disclose that the Legislature has not created a "same-sex marriage" under the guise of another name.

In sum, it is the role of the Legislature, not the courts, to make such public policy. Here, the trial judge did not make public policy; rather, Judge Loren McMaster conscientiously applied well-established rules of statutory construction to reach a decision compelled by the law. As he was required to do, Judge McMaster correctly ruled that the Legislature's enactment of section 297.5 did not constitute an amendment of Proposition 22; that the statute thus became effective without separate approval by the electorate; and, therefore, that section 297.5 is not void.

Accordingly, we shall deny the petition for writ of mandate, without need to address the merits of Judge McMaster's alternate reason for denying petitioners' request for relief. If they feel that the statutory scheme is not wise public policy, petitioners must turn to the Legislature or to the electorate, not the courts, to correct it. (*Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 334 [265 Cal.Rptr. 788].)

## DISCUSSION

### I

Family Code section 300 defines a valid marriage as follows: "Marriage is a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary. Consent alone does not constitute marriage. Consent must be followed by the issuance of a license and solemnization as authorized by this division . . . ." (Further section references are to the Family Code unless otherwise specified.)

Section 308 expands upon this definition by providing that "[a] marriage contracted outside this state that would be valid by the laws of the jurisdiction in which the marriage was contracted is valid in this state." Thus, although common law marriage has been abolished in California (*Elden v. Sheldon* (1988) 46 Cal.3d 267, 275 [250 Cal.Rptr. 254, 758 P.2d 582]), California recognizes the validity of a common law marriage contracted in another state which would be valid under the laws of that state. (*People v. Badgett* (1995) 10 Cal.4th 330, 363 [41 Cal.Rptr.2d 635, 895 P.2d 877]; *Colbert v. Colbert* (1946) 28 Cal.2d 276, 280 [169 P.2d 633].) And under the

plain language of section 308, if another state legalizes same-sex marriage, such marriages would be recognized as valid in California; however, this outcome has been prevented by subsequent legislation.

In 1996, in anticipation of the possible legalization of same-sex marriages in Hawaii, Congress enacted the Defense of Marriage Act (Pub.L. No. 104-199, § 3(a) (Sept. 21, 1996) 110 Stat. 2419; 1996 U.S. Code Cong. & Admin. News, p. 2905), which has two operative provisions. The first defines "marriage" and "spouse" under federal law to include only partners of the opposite sex. (1 U.S.C. § 7.)[1] The second provides that a state shall not be required to recognize same-sex marriages performed in other states. (28 U.S.C. § 1738C.)[2]

In March 2000, the California electorate passed its own defense of marriage initiative, which states: "Only marriage between a man and a woman is valid or recognized in California." (§ 308.5, added by initiative measure, Prop. 22, § 2, eff. Mar. 8, 2000.) Pursuant to section 308.5, California will not recognize same-sex marriages even if those marriages are validly formed in other jurisdictions. In other words, section 308.5 supplants the directive of section 308 in the case of same-sex marriages.

Prior to the passage of Proposition 22, the Legislature enacted section 297, establishing domestic partnership as a recognized legal relationship. (Stats. 1999, ch. 588, § 2 (Assem. Bill No. 26).) That section authorized two persons to register as domestic partners if they were adults sharing a common residence, they agreed to be jointly responsible for each other's basic living expenses, and they were either (1) both persons of the same sex, or (2) persons of the opposite sex, who were both over the age of 62 and eligible to receive Social Security. (Former § 297, subd. (b).) Domestic partners were entitled to certain limited rights concerning hospital visitation, and to health benefits if one of the partners was a state employee. (Former §§ 297, 299.5, subd. (a); former Gov. Code, § 22868 et seq.; Health & Saf. Code, § 1261.)

---

[1] "In determining the meaning of any Act of Congress, or of any ruling, regulation, or interpretation of the various administrative bureaus and agencies of the United States, the word 'marriage' means only a legal union between one man and one woman as husband and wife, and the word 'spouse' refers only to a person of the opposite sex who is a husband or a wife." (1 U.S.C. § 7.)

[2] "No State, territory, or possession of the United States, or Indian tribe, shall be required to give effect to any public act, record, or judicial proceeding of any other State, territory, possession, or tribe respecting a relationship between persons of the same sex that is treated as a marriage under the laws of such other State, territory, possession, or tribe, or a right or claim arising from such relationship." (28 U.S.C. § 1738C.)

Thereafter, the Legislature amended the domestic partnership statutes to expand the rights and obligations of domestic partners (Stats. 2001, ch. 893, §§ 1–61, (Assem. Bill No. 25); .Stats. 2002, ch. 447, §§ 1–3, (Assem. Bill No. 2216)) and to provide that for heterosexual domestic partnerships only one of the partners need be over the age of 62. (Stats. 2001, ch. 893, § 3 (Assem. Bill No. 25).)

In 2003, the Legislature amended the domestic partnership laws again in The California Domestic Partner Rights and Responsibilities Act of 2003 (the Act). (Stats. 2003, ch. 421, § 4 (Assem. Bill No. 205), eff. Jan. 1, 2005.) Section 297.5, subdivision (a) of the Act states: "Registered domestic partners shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses."   .

However, the statute goes on to provide that domestic partners may not file joint tax returns and their earned income is not treated as community property for the purposes of state income tax (§ 297.5, subd. (g)), and that they are not entitled to many of the benefits the federal government provides to married couples, such as marital benefits relating to Social Security, Medicare, federal housing, food stamps, veterans' benefits, military benefits, and federal employment benefit laws. (§ 297.5, subd. (k); 1 U.S.C. § 7.)

Section 299.2 states: "A legal union of two persons of the same sex, other than a marriage, that was validly formed in another jurisdiction, and that is substantially equivalent to a domestic partnership as defined in this part, shall be recognized as a valid domestic partnership in this state regardless of whether it bears the name domestic partnership." Thus, a same-sex legal union that is valid in another jurisdiction will be recognized by California as a domestic partnership (§ 299.2), but not as a marriage (§ 308.5).

The Legislature specified that the Act "is not intended to repeal or adversely affect any other ways in which relationships between adults may be recognized or given effect in California, or the legal consequences of those relationships, including, among other things, civil marriage" (Stats. 2003, ch. 421, § 1, subd. (c) (Assem. Bill No. 205)), and it "does not amend or modify any provision of the California Constitution or any provision of any statute that was adopted by initiative." (§ 297.5, subd. (j).)

## II

According to petitioners, Proposition 22 did more than prevent California from recognizing same-sex marriages from other states; it was designed to protect the institution of marriage by precluding the Legislature from giving the rights and benefits of marriage to alternative relationships.

Therefore, petitioners argue, section 297.5 in effect amended Proposition 22. Citing article II, section 10, subdivision (c), of California's Constitution, petitioners claim that section 297.5 is void because it has not been approved by the voters.

Article II, section 10, subdivision (c), of the California Constitution states: "The Legislature . . . may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval."[3] The purpose of this constitutional limitation of legislative power is "to 'protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent.' [Citations.]" (*Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, 1484 [76 Cal.Rptr.2d 342].)

■ An "amendment" is " ' "any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form, . . ." [Citation.] A statute which adds to or takes away from an existing statute is considered an amendment. [Citation.]' " (*Mobilepark West Homeowners Assn. v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32, 40 [41 Cal.Rptr.2d 393].)

■ The parties disagree as to whether section 297.5 constitutes an amendment of Proposition 22. There are no disputed material facts; the parties simply dispute the legal significance of the relevant facts and reach different conclusions as to whether section 297.5 adds to or takes away from Proposition 22, as codified in section 308.5. Since the answer to this question turns on an interpretation of the two statutes, it is an issue of law that a court may resolve in a summary judgment motion. (*Hernandez v. Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1280 [48 Cal.Rptr.2d 229].)

---

[3] It is undisputed that Proposition 22 did not contain a clause allowing a legislative amendment to the initiative to become effective without separate voters' approval.

In interpreting a voter initiative such as Proposition 22, courts apply the same principles governing the construction of a statute. (*Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 900 [135 Cal.Rptr.2d 30, 69 P.3d 951].) We begin by examining the language of the initiative statute, giving the words their usual and ordinary meaning, viewed in the context of the statute as a whole and the overall statutory scheme. (*People v. Rizo* (2000) 22 Cal.4th 681, 685 [94 Cal.Rptr.2d 375, 996 P.2d 27].) If the terms of the statute are unambiguous, we presume the lawmakers meant what they said, and the plain meaning of the language governs. (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272 [105 Cal.Rptr.2d 457, 19 P.3d 1196].)

"When the language is ambiguous, 'we refer to other indicia of the voters' intent, particularly the analyses and arguments contained in the official ballot pamphlet.' [Citation.]" (*People v. Rizo, supra,* 22 Cal.4th at p. 685.) However, if the language is not ambiguous, " 'not even the most reliable document of legislative history . . . may have the force of law.' [Citation.]" (*City of Sacramento v. Public Employees' Retirement System* (1994) 22 Cal.App.4th 786, 795 [27 Cal.Rptr.2d 545].) A court cannot insert or omit words to cause the meaning of a statute to conform to a presumed intent that is not expressed. (Code Civ. Proc., § 1858; *California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175].) "As a judicial body, it is our role to interpret the laws as they are written." (*San Diego Police Officers Assn. v. City of San Diego Civil Service Com.* (2002) 104 Cal.App.4th 275, 287 [128 Cal.Rptr.2d 248].)

At the time the voters passed Proposition 22, existing statutes defined marriage and domestic partnerships in a manner that indicates they are different legal relationships. Section 300 defines a valid marriage as "a personal relation arising out of a civil contract between a man and a woman, to which the consent of the parties capable of making that contract is necessary . . . followed by the issuance of a license and [a solemnizing ceremony]." In contrast, section 297 stated that domestic partners were "two adults who have chosen to share one another's lives in an intimate and committed relationship of mutual caring," and were both of the same sex, or of the opposite sex as long as they were both over the age of 62. (Former § 297, added by Stats. 1999, ch. 588, § 2 (Assem. Bill No. 26).) Then-existing statutes also granted rights and imposed obligations upon both types of relationships.

The plain language of Proposition 22 and its initiative statute, section 308.5, reaffirms the definition of marriage in section 300, by stating that only marriage between a man and a woman shall be valid and recognized in California. This limitation ensures that California will not legitimize or recognize same-sex marriages from other jurisdictions, as it otherwise would

be required to do pursuant to section 308, and that California will not permit same-sex partners to validly marry within the state.

■ Without submitting the matter to the voters, the Legislature cannot change this absolute refusal to recognize *marriages* between persons of the same sex. (Cal. Const., art. II, § 10, subd. (c).) But the same is not true for enactment of legislation concerning domestic partnerships, a relationship other than marriage. This is so because the plain, unambiguous language of section 308.5 does not state an intent to repeal existing domestic partnership laws or to limit the Legislature's authority to regulate such unions. Section 308.5 does not state that the Legislature is precluded from expanding the rights and obligations of domestic partnerships or that, henceforth, such relationships will not be recognized or fostered in any fashion.

If that had been its purpose, the initiative easily and effectively could have accomplished that goal by using language akin to words used in laws from other states. For example, article I, section 29 of the Nebraska Constitution provides: "Only marriage between a man and a woman shall be valid or recognized in Nebraska. *The uniting of two persons of the same sex in a civil union, domestic partnership, or other similar same-sex relationship shall not be valid or recognized in Nebraska.*" (Italics added; see also Ark. Const., Amend. 83, § 2 ["Legal status for unmarried persons which is identical or substantially similar to marital status shall not be valid or recognized in Arkansas, except that the Legislature may recognize a common law marriage from another state between a man and a woman"]; Ga. Const., art. 1, § 4, ¶ I(b) ["No union between persons of the same sex shall be recognized by this state as entitled to the benefits of marriage"]; Ky. Const., § 233a ["Only a marriage between one man and one woman shall be valid or recognized as a marriage in Kentucky. A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized"]; La. Const., art. 12, § 15 ["No official or court of the state of Louisiana shall construe this constitution or any state law to require that marriage or the legal incidents thereof be conferred upon any member of a union other than the union of one man and one woman. A legal status identical or substantially similar to that of marriage for unmarried individuals shall not be valid or recognized"]; Ohio Const., art. XV, § 11 ["Only a union between one man and one woman may be a marriage valid in or recognized by this state and its political subdivisions. This state and its political subdivisions shall not create or recognize a legal status for relationships of unmarried individuals that intends to approximate the design, qualities, significance or effect of marriage"]; Tex. Fam. Code, § 6.204 [a marriage between persons of the same

sex or a civil union granting to the parties of the relationship the legal protections, benefits, or responsibilities granted to the spouses of a marriage is contrary to public policy and void].)

The plain language of the above cited laws of other states demonstrates an indisputable intent (1) to limit the benefits associated with marriage to marriages between men and women, and (2) to prohibit the recognition of other types of domestic unions or partnerships. Proposition 22 contains no similar language. Given the existence of domestic partnership statutes in California when the initiative was put on the ballot, Proposition 22 needed such language if it was intended to supplant the Legislature's authority to enact and to amend legislation regarding domestic partnerships. Instead, Proposition 22 unambiguously limits its scope to whether California will recognize the validity of *marriages* between persons of the same sex; it says nothing about whether other types of relationships may be permitted to enjoy the rights typically conferred upon married couples.

Because the plain, unambiguous language of Proposition 22 is concerned only with who is entitled to obtain the status of marriage, and not with the rights and obligations associated with marriage, section 297.5 (which does not grant the legal status of marriage to registered domestic partners) does not add to, or take away from, Proposition 22.

Since the language of the initiative is unambiguous, we need not look to other indicia of the voters' intent. (*People v. Rizo, supra,* 22 Cal.4th at p. 685.) Nevertheless, we note that ballot pamphlet materials submitted by proponents of Proposition 22, as well as the nonpartisan explanations of the measure, disclose no intent to limit the statutory rights of domestic partners.[4]

The Legislative Analyst explained the measure as follows: "**Background** [¶] Under current California law, 'marriage' is based on a civil contract between a man and a woman. Current law also provides that a legal marriage that took place outside of California is generally considered valid in California. No state in the nation currently recognizes a civil contract or any other relationship between two people of the same sex as a marriage. [¶] **Proposal** [¶] This

---

[4] In the trial court, petitioners sought judicial notice of a declaration of one of the drafters of the initiative measure to show the measure's intended scope of coverage. The trial judge denied petitioner's request for judicial notice of this declaration. Petitioners have not challenged this ruling. In any event, the trial court was correct. Such evidence is not persuasive as to voter intent, and the ballot arguments are the only proper extrinsic aid that can be considered on the subject. (*Mobilepark West Homeowners Assn. v. Escondido Mobilepark West, supra,* 35 Cal.App.4th at p. 42, fn. 6.)

measure provides that only marriage between a man and a woman is valid or recognized in California." (Ballot Pamp., Prop. 22, Primary Elec. (Mar. 7, 2000), analysis by Legis. Analyst, at p. 51 (hereafter Ballot Pamphlet).)

The argument in favor of Proposition 22 asserted that "even though California law already says only a man and a woman may marry, it also recognizes marriages from other states. However, judges in some of those states want to define marriage differently than we do. If they succeed, California may have to recognize new kinds of marriages, even though most people believe marriage should be between a man and a woman." (Ballot Pamp., *supra*, argument in favor of Prop. 22, p. 52.)

The rebuttal to the opposing argument emphatically stated: "THE TRUTH IS, *UNLESS WE PASS PROPOSITION 22, LEGAL LOOPHOLES COULD FORCE CALIFORNIA TO RECOGNIZE 'SAME-SEX MARRIAGES' PER-FORMED IN OTHER STATES.* [¶] That's why 30 other states and the federal government have passed laws to close these loopholes. California deserves the same choice." (Ballot Pamp., *supra*, rebuttal to argument against Prop. 22, p. 53, original italics and capitalization.)

And the summary of the ballot measure said: "A YES vote on this measure means: California law will provide that only a marriage between a man and a woman is valid or recognized in California." The summary continues: "A NO vote on this measure means: California law will (1) continue to define marriage based on a civil contract between a man and a woman and (2) generally recognize legal marriages that took place outside of California as valid in California." (Ballot Pamp., *supra*, what your vote means, p. 6.)

These ballot materials directly support the interpretation that Proposition 22 was intended solely to preserve the status of marriage in California for persons of the opposite sex by preventing the recognition of marriages from other jurisdictions if those marriages are between homosexuals. No mention is made of an intent to limit the rights and obligations of domestic partnerships, civil unions, or any other kind of same-sex relationship regardless of its characterization. If this were the actual intent of the proponents of Proposition 22, the electorate was not given the opportunity to vote on that undisclosed objective. It is well established that courts "may not properly interpret the measure in a way that the electorate did not contemplate: the voters should get what they enacted, not more and not less." (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114 [86 Cal.Rptr.2d 884, 980 P.2d 433].)

Petitioners note that the argument against Proposition 22 in the ballot pamphlet claimed the proponents' "real purpose" in placing Proposition 22 on the ballot was "to use [it] as a tool in court to deny basic civil rights to lesbians and gays and their families." (Ballot Pamp., *supra*, argument against Prop. 22, p. 53.) This, petitioners argue, shows the voters were "unequivocally told" that "the initiative would strip away the existing rights of same-sex couples and prohibit the extension of marital rights to such partners in the future." However, in their rebuttal to argument against Proposition 22, the proponents of the initiative denied any intent to take away such rights: "THAT'S ABSOLUTELY FALSE! Do they really expect voters to believe that? [¶] THE TRUTH IS, *PROPOSITION 22 DOESN'T TAKE AWAY ANYONE'S RIGHTS*. [¶] Whatever you think of 'same-sex marriages,' we can all agree that our opponents' use of scare tactics and deceit is the wrong way to address important issues." (Ballot Pamp., *supra*, rebuttal to argument against Prop. 22, p. 53.) This exchange does not support petitioners' interpretation of Proposition 22.

Indeed, in their rebuttal to the opponents' argument, the proponents emphasized: " 'Only marriage between a man and a woman is valid or recognized in California.' [¶] That's all Proposition 22 says, and that's all it does." (Ballot Pamp., *supra*, rebuttal to argument against Prop. 22, p. 53.)

Since Proposition 22 was directed only at preserving the status of marriage for persons of the opposite sex, and not with limiting or withholding statutory rights relating to other types of legal relationships, section 297.5 did not amend the initiative measure.

III

Despite the plain, unambiguous language of Proposition 22, and its intent as evidenced in the ballot materials, petitioners persist in contending that the initiative did more than simply preserve the status of marriage for partners of the opposite sex. They argue that Proposition 22 protects the institution of marriage itself, which they contend requires that the myriad of rights, benefits, and obligations associated therewith must be reserved only for married persons.

Petitioners point to *Elden v. Sheldon, supra*, 46 Cal.3d 267 (hereafter *Elden*), in which the California Supreme Court said: "[T]he state has a strong

interest in the marriage relationship; to the extent unmarried cohabitants are granted the same rights as married persons, the state's interest in promoting marriage is inhibited. . . . 'Spouses receive special consideration from the state, for marriage is a civil contract "of so solemn and binding a nature . . . that the consent of the parties alone will not constitute marriage . . . the consent of the state is also required." [Citation.] Marriage is accorded this degree of dignity in recognition that "[t]he joining of the man and woman in marriage is at once the most socially productive and individually fulfilling relationship that one can enjoy in the course of a lifetime." [Citation.] Consonant therewith, the state is most solicitous of the rights of spouses. [Citation.] The state affords similar protection to certain putative relationships in recognition of the good faith in which the innocent party undertook to marry. [Citation.] Unmarried cohabitants receive no similar solicitous statutory protection, nor should they; such would impede the state's substantial interest in promoting and protecting marriage.' [Citation.]" (*Id.* at pp. 274–275.)

According to petitioners, because *Elden* tied the conferral of marital rights to the state's interest in promoting marriage, Proposition 22 necessarily was intended to withhold those rights from alternative relationships. They contend that the conferral of those rights on domestic partnerships is the equivalent of permitting homosexuals to marry, which they say is an absurd result and conflicts with fundamental public policy.

Petitioners misinterpret *Elden*, which involved a male plaintiff's causes of action for loss of consortium and negligent infliction of emotional distress, based on witnessing his female cohabitant's tortious injury and death. (*Elden, supra,* 46 Cal.3d at p. 269.) Holding that neither cause of action can be extended to unmarried cohabiting couples, *Elden* explained: "Our emphasis on the state's interest in promoting the marriage relationship is not based on anachronistic notions of morality. The policy favoring marriage is 'rooted in the necessity of providing an institutional basis for defining the fundamental relational rights and responsibilities of persons in organized society.' [Citation.] . . . Plaintiff does not suggest a convincing reason why cohabiting unmarried couples, who do not bear such legal obligations toward one another, should be permitted to recover for injuries to their partners to the same extent as those who undertake these responsibilities." (*Id.* at p. 275.)

Thus, *Elden* was concerned with granting rights associated with marriage to cohabitants who had the ability to marry but chose not to do so, and therefore had not taken on any of the responsibilities and burdens of marriage. That is a very different situation than the one presented here. Unlike heterosexuals who cohabit, homosexuals are precluded from marrying their cohabiting partners; but by registering as domestic partners, they

agree to accept the responsibilities imposed on a spouse in exchange for receiving the associated benefits. Granting such rights to domestic partners of the same sex will not impede the state's interest in promoting and protecting marriage because the voters have decided that homosexual couples cannot marry. Stated another way, unlike the withholding of benefits from same-sex cohabitants in order to promote and protect marriage by encouraging them to marry (*Elden, supra,* 46 Cal.3d at p. 275), the withholding of statutory benefits for homosexual domestic partners will not, indeed cannot, encourage them to marry.

Furthermore, California's societal interest in " 'providing an institutional basis for defining the fundamental relational rights and responsibilities of persons in organized society' " (*Elden, supra,* 46 Cal.3d at p. 275) applies equally to domestic partners. This is so because although homosexual domestic partners cannot marry (§§ 300, 308.5), they are not precluded from creating families using the same methods utilized by many heterosexual couples, i.e., adoption, artificial insemination, and surrogacy. The children of such unions are no less deserving of the protections afforded the children of heterosexual marriages. For this reason, the Legislature has directed in the law challenged by petitioners that "[t]he rights and obligations of registered domestic partners with respect to a child of either of them shall be the same as those of spouses," both during the domestic partnership and after its termination. (§ 297.5, subd. (d).)[5]

Thus, the Legislature was entitled to conclude that enactment of a statute encouraging same-sex couples to register as domestic partners is beneficial to society in the same way as is encouraging heterosexual couples to marry. It provides an institutional basis for defining their fundamental rights and responsibilities, which is essential to an organized and civilized society and to promote family stability. In the words of the Legislature while enacting section 297.5: "Expanding the rights and creating responsibilities of registered domestic partners would further California's interests in promoting family relationships and protecting family members during life crises, and would reduce discrimination on the bases of sex and sexual orientation in a manner consistent with the requirements of the California Constitution. . . ." (Stats. 2003, ch. 421, § 1 (Assem. Bill No. 205).)[6]

---

[5] "The rights and obligations of registered domestic partners with respect to a child of either of them shall be the same as those of spouses. The rights and obligations of former or surviving registered domestic partners with respect to a child of either of them shall be the same as those of former or surviving spouses." (§ 297.5, subd. (d).)

[6] Section 1 of the Act states in pertinent part: "(a) This act is intended to help California move closer to fulfilling the promises of inalienable rights, liberty, and equality contained in Sections 1 and 7 of Article 1 of the California Constitution by providing all caring and committed couples, regardless of their gender or sexual orientation, the opportunity to obtain

■ We cannot say, as petitioners would like us to do, that this public policy decision by the Legislature to grant to registered domestic partners some of the benefits, and to impose upon them the responsibilities, associated with spouses is an absurd violation of public policy. Indeed, it is the role of the Legislature, not the courts, to make public policy. (*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 71 [78 Cal.Rptr.2d 16, 960 P.2d 1046].)

■ Contrary to petitioners' suggestion, the Legislature has not created a "marriage" by another name or granted domestic partners a status equivalent to married spouses. In fact, domestic partners do not receive a number of marital rights and benefits. For example, they may not file joint tax returns and their earned income is not treated as community property for state income tax purposes (§ 297.5, subd. (g)), and they are not entitled to numerous benefits provided to married couples by the federal government (§ 297.5, subd. (k)), such as marital benefits relating to Social Security, Medicare, federal housing, food stamps, veterans' benefits, military benefits, and federal employment benefit laws.

And prerequisites for the formation of domestic partnerships differ from marriage. Persons under the age of 18 who wish to marry may do so with parental consent (§ 302); however, there is no similar provision for minors to register as domestic partners. In addition, homosexuals must share a common residence before they can register as domestic partners (§ 297, subd. (b)(1)), but there is no similar limitation for persons who wish to marry. Thus, prison inmates have the right and ability to marry despite the fact they are incarcerated, do not currently reside with their intended spouse, and might never reside with their spouse; however, similarly situated homosexual inmates cannot register as domestic partners.

In addition, the mechanisms for forming and terminating the relationships are different. Domestic partners simply file with the Secretary of State a

essential rights, protections, and benefits and to assume corresponding responsibilities, obligations, and duties and to further the state's interests in promoting stable and lasting family relationships, and protecting Californians from the economic and social consequences of abandonment, separation, the death of loved ones, and other life crises. [¶] (b) The Legislature hereby finds and declares that despite longstanding social and economic discrimination, many lesbian, gay, and bisexual Californians have formed lasting, committed, and caring relationships with persons of the same sex. These couples share lives together, participate in their communities together, and many raise children and care for other dependent family members together. Many of these couples have sought to protect each other and their family members by registering as domestic partners with the State of California and, as a result, have received certain basic legal rights. Expanding the rights and creating responsibilities of registered domestic partners would further California's interests in promoting family relationships and protecting family members during life crises, and would reduce discrimination on the bases of sex and sexual orientation in a manner consistent with the requirements of the California Constitution. . . ."

Declaration of Domestic Partnership to form their legal union (§ 298.5); but couples who want to marry must obtain a license and participate in some form of ceremony solemnizing their marriage. (§§ 300, 420.) Another difference is the method for terminating a domestic partnership. If there are no children of the union, if the partnership is not more than five years in duration, and if the partners meet certain conditions relating to property and debts, they may terminate the relationship simply by filing with the Secretary of State a Notice of Termination of Domestic Partnership (§ 299.) The dissolution of a marriage under similar circumstances requires judicial intervention. (§§ 2400–2403.) These factors indicate marriage is considered a more substantial relationship and is accorded a greater stature than a domestic partnership. More than the mere filing of documents with the Secretary of State is required to form or dissolve a marriage.

Where the domestic partnership is long term, involves children, or involves substantial property, the procedure for terminating the partnership shares more similarities to dissolution of a marriage and does require judicial intervention. (§§ 299, subd. (d), 2330.) Differences remain, however, such as the fact there is no California residency requirement for termination of a domestic partnership, unlike a marital dissolution. (§§ 299, subd. (d), 2320.)

Furthermore, unlike a marriage, a domestic partnership will not automatically be recognized by other states. Therefore, if the domestic partners move out of California, the rights bestowed by our state's domestic partnership law may well become illusory. For example, domestic partners may find it difficult to terminate their relationship in other jurisdictions. (See, e.g., *Rosengarten v. Downes* (2002) 71 Conn.App. 372 [802 A.2d 170].) And many of the rights bestowed upon domestic partners, such as the right to visit their hospitalized partner and to make medical decisions for him or her, may not be acknowledged by other states. Consequently, domestic partners do not have the same freedom to travel and retain the benefits associated with their union as do married persons.

The numerous dissimilarities between the two types of unions disclose that the Legislature has not created a "same-sex marriage" under the guise of another name.

For all of the reasons stated above, we conclude the trial judge correctly ruled that the Legislature's enactment of section 297.5 did not constitute an amendment of Proposition 22; that the statute thus became effective without separate approval by the electorate; and, therefore, that section 297.5 is not void.

## DISPOSITION

The petition for a writ of mandate is denied. Having served its purpose, the alternative writ of mandate is discharged. The parties shall bear their own costs in this writ proceeding. (Cal. Rules of Court, rule 56(*l*)(2).) Because petitioners are not the prevailing party, their request for attorney fees (Code Civ. Proc., § 1021.5) is denied. (See *Schmier v. Supreme Court* (2002) 96 Cal.App.4th 873, 877 [117 Cal.Rptr.2d 497].)

Sims, J., and Raye, J., concurred.

A petition for a rehearing was denied April 22, 2005, and petitioners' petition for review by the Supreme Court was denied June 29, 2005. Brown, J., did not participate therein.