163 Cal.App.4th 124 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
PATRICK K. KELLY, Defendant and Appellant.
In re PATRICK K. KELLY on Habeas Corpus.
No. B195624. No. B201234.
Court of Appeals of California, Second District, Division Three.
May 22, 2008.
CERTIFIED FOR PARTIAL PUBLICATION[*]]
*127 Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Lawrence M. Daniels and Ana R. Duarte, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
ALDRICH, J.

INTRODUCTION
In 1996, California voters approved Proposition 215, the Compassionate Use Act of 1996 (CUA; Health & Saf. Code, § 11362.5). The CUA provides that a patient who possesses or cultivates marijuana for his or her personal medical purposes upon a doctor's recommendation is not liable for certain marijuana-related offenses. Although the CUA states that the marijuana possessed or cultivated must be for the patient's "personal medical purposes," the CUA does not place a numeric cap on how much marijuana a patient may possess or cultivate. The Legislature, however, thereafter enacted, without the voters' approval, Health and Safety Code section 11362.77.[1] That section caps the amount of marijuana a patient may have at eight ounces of dried marijuana and six mature or 12 immature marijuana plants, unless the patient has a doctor's recommendation that the specified quantity does not meet the patient's needs.
Defendant, appellant, and petitioner Patrick K. Kelly had a doctor's recommendation to use marijuana. But he did not have a doctor's recommendation to have more than eight ounces of dried marijuana. After getting a search warrant, law enforcement officers searched defendant's home. Officers found about 12 ounces of dried marijuana and marijuana plants. At defendant's trial for sale and cultivation of marijuana, the prosecutor, relying on section 11362.77, argued that because defendant possessed 12 ounces of dried marijuana but lacked a recommendation to possess more than eight ounces, defendant was guilty of the charged offenses.
(1) The prosecutor's argument was improper. It was improper because the CUA can only be amended with voters' approval. Voters, however, did not *128 approve the eight-ounce limit and other caps in section 11362.77; hence, section 11362.77 unconstitutionally amends the CUA. It was prejudicial error therefore to allow the prosecutor to argue that defendant could be found guilty of the charged crimes if he had more than eight ounces of dried marijuana and did not have a doctor's recommendation to have more than that amount.
Defendant is entitled to a retrial because it was error to admit evidence and argument regarding section 11362.77. He is not, however, entitled to suppression of evidence, an issue he raises in his petition for writ of habeas corpus, consolidated with the appeal and addressed in the nonpublished portion of this opinion. We therefore reverse the judgment and remand for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

I. Factual background.

A. A doctor gives a recommendation to defendant to use marijuana.

Defendant suffers from, among other things, hepatitis C, chronic back problems (including ruptured disks), nausea, fatigue, mood problems, cirrhosis, and loss of appetite. Defendant has tried to treat the pain his ailments cause with epidurals, pain therapy, hot and cold braces, nerve simulators, and medication. Dissatisfied with this treatment plan, in part due to the cost of pain management pills,[2] defendant sought a recommendation to use marijuana. On February 20, 2005, Dr. Eve Elting at Medicann, a physician-owned organization that evaluates patients who want cannabis for medical reasons, saw defendant. Dr. Elting reviewed his medical records, had him fill out a 15-page form, and talked to him. After evaluating defendant, Dr. Elting gave him a written recommendation, good for one year, to use marijuana. The recommendation was renewed on January 16, 2006. Dr. Elting did not recommend a dosage.
Unable to afford marijuana from a dispensary, defendant began growing it at home for his personal use. He consumes between one and two ounces of marijuana per week. It lessens his nausea, although its effectiveness has decreased over time. Defendant denied ever selling marijuana.

B. Defendant's home is searched.

In October 2005, a confidential informant told a law enforcement officer that he or she suspected defendant of growing marijuana. Deputy Michael *129 Bartman went to the informant's home, from where he could see marijuana plants growing in defendant's backyard. Law enforcement officers, after getting a warrant, searched defendant's home. They found marijuana plants[3] and vacuum-sealed baggies containing a total of approximately 12 ounces of dried marijuana. Attached to a marijuana plant was a homemade tripwire constructed from Christmas wrapping and bells. Defendant explained that the homemade alarm system was for general protection rather than specifically to protect the marijuana plants, because his backyard is accessible from the driveway. Deputies also recovered a scale and a loaded gun from a nightstand in the master bedroom. No pagers, cell phones, pay-owe sheets, money, safes or elaborate growing systems were found.
The doctor's original recommendation to use marijuana was in the master bedroom. A copy of the recommendation was taped to the garage. A deputy called the phone number on the note and was told that defendant had a "prescription" to use marijuana.

C. Expert testimony at trial.

Deputy Michael Bartman testified that the marijuana recovered from defendant's home was possessed for sale. Despite the absence of nickel and dime bags, the deputy believed that defendant packaged the marijuana in larger quantities to supply other sellers. The deputy, however, has minimal experience concerning marijuana used for medicinal purposes.
Christopher Conrad, the defense's medical marijuana expert, testified that storing marijuana in baggies is consistent with medicinal use. One-ounce baggies are consistent with sale, but not two-ounce baggies, such as were found at defendant's home. If defendant used the marijuana at a rate of two ounces a week, the 12 ounces of dried marijuana found at his home would last him a little over six weeks.

II. Procedural background.

An information charged defendant with count 1, possessing marijuana for sale (§ 11359) and with count 2, cultivating marijuana (§ 11358). A jury, on October 31, 2006, found defendant guilty of the lesser offense of possessing more than 28.5 grams of marijuana (§ 11357, subd. (c)) and of count 2. On December 6, the trial court sentenced defendant to three years' probation under the term and condition, among others, he serve two days in jail. This timely appeal followed.

*130 DISCUSSION

I. Section 11362.77 is unconstitutional because it amends the CUA.

At defendant's trial, the prosecutor, over defendant's objection,[4] was allowed to argue that defendant could not possess more than eight ounces of dried marijuana unless he had a physician's recommendation he needed more than that amount. But the Health and Safety Code section the prosecutor relied on in making this argumentsection 11362.77unconstitutionally amends the CUA. Therefore, allowing the prosecutor to make this argument was prejudicial error, as we explain.

A. Proposition 215 and the Medical Marijuana Program.

(2) At the November 5, 1996, General Election, voters approved Proposition 215, which added section 11362.5, the CUA. The CUA ensures that "Californians who obtain and use marijuana for specified medical purposes upon the recommendation of a physician are not subject to certain criminal sanctions." (People v. Wright (2006) 40 Cal.4th 81, 84 [51 Cal.Rptr.3d 80, 146 P.3d 531].) To that end, the CUA provides, in part: "Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).)[5] (3) The CUA does not grant *131 immunity from arrest. (People v. Mower (2002) 28 Cal.4th 457, 468-469 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) It grants a limited immunity from prosecution. Thus, a defendant may move to set aside an indictment or information before trial or raise a defense under the CUA at trial. (Mower, at pp. 470-475.)
To "`[c]larify the scope of the application of the [CUA] and facilitate the prompt identification of qualified patients and their designated primary caregivers in order to avoid unnecessary arrest and prosecution of these individuals and provide needed guidance to law enforcement officers,'" the Legislature, in 2003, introduced Senate Bill No. 420 (2003-2004 Reg. Sess.), the Medical Marijuana Program (MMP), which added section 11362.7 et seq. (People v. Wright, supra, 40 Cal.4th at p. 93.) The MMP seeks to "`address additional issues that were not included within the [CUA], and that must be resolved in order to promote the fair and orderly implementation of the [CUA].' [Citation.]" (Ibid.) To those ends, the MMP, among other things, establishes a voluntary program for the issuance of identification cards to "qualified patients"patients entitled to protection under the CUA but who do not have an identification card. (§§ 11362.7, subd. (f), 11362.71.) Participation in the program is not mandatory. But there is an advantage to participating in it: participants are not subject to arrest for possession, transportation, delivery or cultivation of medical marijuana "in an amount established" under the MMP. (§ 11362.71, subd. (e).)
Section 11362.77, subdivision (a), establishes the amount of marijuana a qualified patient or primary caregiver may possess; namely, no more than eight ounces of dried marijuana plus six mature or 12 immature marijuana plants.[6] If a qualified patient or primary caregiver has a physician's recommendation that this quantity does not meet the patient's medical needs, the *132 patient or caregiver may possess an amount of marijuana consistent with the patient's needs. (§ 11362.77, subd. (b).) These quantity limits apply to people who are not voluntarily participating in the identification cardholder program. (§§ 11362.77, subds. (a), (f).) Therefore, defendant, who is not a cardholder but is a qualified patient, must comply with section 11362.77.[7]

B. Section 11362.77 amends the CUA, and therefore it is unconstitutional.

(4) Legislative acts, such as the MMP, are entitled to a strong presumption of constitutionality. The Legislature nonetheless cannot amend an initiative, such as the CUA, unless the initiative grants the Legislature authority to *133 do so. (Cal. Const., art. II, § 10, subd. (c);[8]People v. Cooper (2002) 27 Cal.4th 38, 44 [115 Cal.Rptr.2d 219, 37 P.3d 403]; Amwest Surety Ins. Co. v. Wilson (1995) 11 Cal.4th 1243, 1251-1253, 1256 [48 Cal.Rptr.2d 12, 906 P.2d 1112].) The CUA does not grant the Legislature the authority to amend it without voter approval. Therefore, if section 11362.77, which was enacted without voter approval, amends the CUA, then it is unconstitutional.
(5) "An `amendment' is `"`any change of the scope or effect of an existing statute, whether by addition, omission, or substitution of provisions, which does not wholly terminate its existence, whether by an act purporting to amend, repeal, revise, or supplement, or by an act independent and original in form . . . [.]' [Citation.] A statute which adds to or takes away from an existing statute is considered an amendment. [Citation.]"' [Citation.]" (Knight v. Superior Court (2005) 128 Cal.App.4th 14, 22 [26 Cal.Rptr.3d 687]; see also People v. Cooper, supra, 27 Cal.4th at p. 44.) Whether an act amends existing law is determined "`by an examination and comparison of its provisions with existing law. If its aim is to clarify or correct uncertainties which arose from the enforcement of the existing law, or to reach situations which were not covered by the original statute, the act is amendatory, even though in its wording it does not purport to amend the language of the prior act.' (Italics in original.)" (Franchise Tax Bd. v. Cory (1978) 80 Cal.App.3d 772, 777 [145 Cal.Rptr. 819].)
(6) When deciding whether a legislative act amends an initiative, we must keep in mind that "`[i]t is "`the duty of the courts to jealously guard [the people's initiative and referendum power]' . . . . `[I]t has long been our judicial policy to apply a liberal construction to this power wherever it is challenged in order that the right [to local initiative or referendum] be not improperly annulled.'" [Citation.]' [Citation.] Any doubts should be resolved in favor of the initiative and referendum power, and amendments which may conflict with the subject matter of initiative measures must be accomplished by popular vote, as opposed to legislatively enacted ordinances, where the original initiative does not provide otherwise. [Citations.]" (Proposition 103 Enforcement Project v. Quackenbush (1998) 64 Cal.App.4th 1473, 1485-1486 [76 Cal.Rptr.2d 342].)
(7) In this case, we do not think that section 11362.77 may amend the CUA. It clearly does. The CUA provides that the offenses of possession and cultivation of marijuana shall not apply to a patient who possesses or cultivates marijuana for his or her personal medical purposes upon the *134 recommendation or approval of a physician. (§ 11362.5, subd. (d).) The CUA does not quantify the marijuana a patient may possess. Rather, the only "limit" on how much marijuana a person falling under the CUA may possess is it must be for the patient's "personal medical purposes."[9] (§ 11362.5, subd. (d).)
Ballot materials make clear that this is the only "limitation" on how much marijuana a person under the CUA may possess. An argument against the CUA was it "allows unlimited quantities of marijuana to be grown anywhere. . . in backyards or near schoolyards without any regulation or restrictions. This is not responsible medicine. It is marijuana legalization." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996), argument against Prop. 215, p. 61.) San Francisco District Attorney Terence Hallinan responded, "Proposition 215 does not allow `unlimited quantities of marijuana to be grown anywhere.' It only allows marijuana to be grown for a patient's personal use. Police officers can still arrest anyone who grows too much, or tries to sell it." (Id., rebuttal to argument against Prop. 215, p. 61.) According to these ballot statements, the CUA does not place a numeric cap on how much marijuana is sufficient for a patient's personal medical use.
Section 11362.77, however, does just that. It specifies that a qualified patient may possess eight ounces of dried marijuana plus six mature or 12 immature marijuana plants. (§ 11362.77, subd. (a).) A qualified patient may possess a greater quantity if the patient has a doctor's recommendation that the quantity in subdivision (a) does not meet the qualified patient's medical needs. (§ 11362.77, subd. (b).) In other words, section 11362.77, subdivision (a), has clarified what is a reasonable amount for a patient's personal medical use, namely, eight ounces of dried marijuana.
But clarifying the limits of "reasonableness" is amendatory. (See, e.g., California Lab. Federation v. Occupational Safety & Health Stds. Bd. (1992) 5 Cal.App.4th 985 [7 Cal.Rptr.2d 399].) California Lab. Federation concerned an unconstitutional amendment to Code of Civil Procedure section 1021.5, which codifies the private attorney general attorney fee doctrine. Code of Civil Procedure section 1021.5 contains no express limit on the size of a fee award, although the statute necessarily implies that a party may recover only a "reasonable" fee. (5 Cal.App.4th at pp. 993-995.) The Legislature's Budget Act, however, imposed a $125 per hour cap on fee-award payments under Code of Civil Procedure section 1021.5. The cap was impermissibly *135 amendatory even if it aimed merely to clarify or to correct uncertainties in existing law. (5 Cal.App.4th at p. 995.)[10] By imposing substantive conditions where there were none, the challenged provision was amendatory. (5 Cal.App.4th at p. 995.)
The Legislature's imposition of quantity limits in section 11362.77 similarly amends the CUA. Section 11362.77 imposes a numeric cap where the CUA imposed none. Indeed, the Legislature itself recognized it had overstepped its bounds in imposing the cap. In 2004, Senator John Vasconcellos, who introduced the MMP, authored and introduced Senate Bill No. 1494 (2003-2004 Reg. Sess.). Senate Bill No. 1494 would have amended section 11362.77 by, among other things, deleting the eight-ounce and plant limits as follows: "A qualified patient, a person with an identification card, or any designated primary caregiver may possess any amount of marijuana consistent with the medical needs of that qualified patient or person with an identification card."[11] (Italics added.)
In introducing Senate Bill No. 1494 (2003-2004 Reg. Sess.), Senator Vasconcellos acknowledged the MMP's constitutional flaw when he said, "`[Senate Bill No. 1494] is a clean-up bill ... intended to correct a drafting error in my medical marijuana bill signed into law last year.... [The MMP's] language may be problematic because it states that all qualified patients (with or without identification cards) are subject to guidelines provided in [the] statute. Despite intent language in our bill stating that the program is intended to be voluntary, many advocates argued that it amends *136 the initiative by making the guidelines mandatorytherefore making it unconstitutional. In order to avoid any legal challenges, it is important to make a distinction between "qualified patient" (which applies to all patients) and "persons with identification cards."'" (Assem. Com. on Pub. Safety, com. on Sen. Bill No. 1494 (2003-2004 Reg. Sess.) as amended Mar. 22, 2004, p. 3; see also Sen. Health & Human Services Com., Analysis of Sen. Bill No. 1494 (2003-2004 Reg. Sess.) as amended Mar. 22, 2004, p. 3 [the change effected by the MMP "could be viewed as an unlawful amendment to Proposition 215, an initiative that did not provide a mechanism for amendments"].)
(8) Deleting the quantity limits in the manner suggested by Senate Bill No. 1494 (2003-2004 Reg. Sess.) would have corrected the constitutional problem created when the Legislature enacted the MMP without voter approval. Governor Schwarzenegger, however, vetoed the bill, citing a concern that the bill removed "[r]easonable and established quantity guidelines." (Governor Arnold Schwarzenegger, letter to the Members of the Cal. State Sen. re Sen. Bill No. 1494, July 19, 2004.) That may be a valid concern. Nevertheless, it is a concern that cannot be addressed by the Legislature acting without the voters' approval. We therefore now hold that section 11362.77 unconstitutionally amends the CUA, and it must be severed from the MMP.[12]
The Attorney General urges us to avoid this outcome by finding that, in any event, defendant has not demonstrated prejudice because he was allowed to and did present a defense under the CUA. The Attorney General points out that the jury instructions did not reference the eight-ounce or other quantity limits. Rather, the jury was instructed on the CUA defense as follows: "Possession or cultivation of marijuana is not unlawful if authorized by the Compassionate Use Act. The Compassionate Use Act allows a person to possess or cultivate marijuana for personal medical purposes when a physician has recommended or approved such use. The amount of marijuana possessed or cultivated must be reasonably related to the patient's current medical needs. The People have the burden of proving beyond a reasonable doubt that the defendant was not authorized to possess or cultivate marijuana for medical purposes. If the People have not met this burden, you must find the defendant not guilty of this charge."
This instruction is consistent with the CUA, and, by itself, raises no constitutional problem. The problem, however, is not with the instruction. It *137 is with the prosecutor's references to section 11362.77 while examining witnesses and in argument. The prosecutor asked Christopher Conrad and Dr. Elting to confirm that section 11362.77, subdivision (a), says that a qualified patient can possess no more than eight ounces of dried marijuana, unless they have a medical recommendation to exceed that amount. The prosecutor then repeatedly argued that defendant did not have a recommendation to possess more than eight ounces of dried marijuana: "The facts are that the defendant has [a] physician's statement that he can use marijuana for medical purposes. That's not in dispute . . . . But, what's also clear is that the law says he can only have eight ounces of dried mature female plant. And testimony by the defense expert Mr. Conrad stated that the amount that was recovered which was about ... 12 ounces. [¶] Well, guess what? Twelve ounces is still more than eight ounces of marijuana .... So what happens if the defendant has more than eight ounces of the dried marijuana stuff? Then, there has to be some evidence to show that the doctor recommended more than that. And there is no evidence . . . . It's not disputed that there is no evidence presented to show that the defendant has any medical recommendation that exceeds the eight ounces." The prosecutor continued, "If, for example, you decide, well you know what? I don't think he intend[ed] to possess for sale. But, you know what? What he can possess is only eight ounces. . . . So, the excess that he possess[ed], the other four ounces you can consider that in the possession charge. . . ."
After reading section 11362.77, subdivision (a), to the jury, the prosecutor said, "What does that mean? He can have eight ounces of the dried stuff. We know he has 12 at least, he can have eight ounces of the stuff or he can have six immature plants. Evidence was that they found seven plants in this particular case. But you know what? We're not saying, no, you can't have what you need. That's not what the law says. The law says before you can have more than that you need a doctor's recommendation. He doesn't have a doctor's recommendation, Ladies and Gentleman." "[Y]ou can't have more than eight ounces, unless he has [a] recommendation and he doesn't have that."
Therefore, although the jury was properly instructed that defendant could possess an amount of marijuana reasonably related to his current medical needs, the prosecutor improperly argued that eight ouncesbut no morewas "reasonable" in the absence of a doctor's recommendation, which defendant did not have. This was prejudicial error. We cannot conclude that the jury found defendant guilty because they believed the amount of marijuana he possessed and cultivated was not reasonably related to his medical needs, as opposed to believing defendant was guilty because he had more marijuana than section 11362.77 says he may have. Defendant therefore is entitled to a reversal of the judgment.

*138 II. The petition for writ of habeas corpus.[*]
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION
The judgment is reversed and the matter is remanded for further proceedings.
The petition for writ of habeas corpus is denied.
Croskey, Acting P. J., and Kitching, J., concurred.
NOTES
[*] Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of part II. of the Discussion.
[1] All further undesignated statutory references are to the Health and Safety Code.
[2] The medication costs $1,387 per month; defendant receives $1,034 per month in Social Security.
[3] It is unclear whether defendant had seven potted plants plus additional plants alongside the garage or just seven plants total.
[4] Defendant moved in limine to exclude testimony and argument regarding section 11362.77, subdivision (a), on the ground it is unconstitutional.
[5] The CUA provides in full: "(a) This section shall be known and may be cited as the Compassionate Use Act of 1996. [¶] (b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows: [¶] (A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief. [¶] (B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction. [¶] (C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana. [¶] (2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes. [¶] (c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes. [¶] (d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician. [¶] (e) For the purposes of this section, `primary caregiver' means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person." (§ 11362.5.)
[6] Section 11362.77 provides in full: "(a) A qualified patient or primary caregiver may possess no more than eight ounces of dried marijuana per qualified patient. In addition, a qualified patient or primary caregiver may also maintain no more than six mature or 12 immature marijuana plants per qualified patient. [¶] (b) If a qualified patient or primary caregiver has a doctor's recommendation that this quantity does not meet the qualified patient's medical needs, the qualified patient or primary caregiver may possess an amount of marijuana consistent with the patient's needs. [¶] (c) Counties and cities may retain or enact medical marijuana guidelines allowing qualified patients or primary caregivers to exceed the state limits set forth in subdivision (a). [¶] (d) Only the dried mature processed flowers of female cannabis plant or the plant conversion shall be considered when determining allowable quantities of marijuana under this section. [¶] (e) The Attorney General may recommend modifications to the possession or cultivation limits set forth in this section. These recommendations, if any, shall be made to the Legislature no later than December 1, 2005, and may be made only after public comment and consultation with interested organizations, including, but not limited to, patients, health care professionals, researchers, law enforcement, and local governments. Any recommended modification shall be consistent with the intent of this article and shall be based on currently available scientific research. [¶] (f) A qualified patient or a person holding a valid identification card, or the designated primary caregiver of that qualified patient or person, may possess amounts of marijuana consistent with this article."
[7] The Attorney General argues that the limits in section 11362.77 apply only to cardholders. Because defendant is not a cardholder, the Attorney General argues that we need not reach the constitutional issue. The argument is meritless. It is meritless because, first, section 11362.77, subdivision (a), plainly states its quantity limits apply to "qualified patient[s]." A "`[q]ualified patient'" is "a person who is entitled to the protections of [the CUA], but who does not have an identification card issued pursuant to this article." (§ 11362.7, subd. (f), italics added.) Also, section 11362.77, subdivision (f), states, "A qualified patient or a person holding a valid identification card, or the designated primary caregiver of that qualified patient or person, may possess amounts of marijuana consistent with this article."

Although these provisions of the MMP make it clear that the quantity limits in section 11362.77 apply to noncardholder qualified patients and to cardholders, the Attorney General cites to statements in the MMP's legislative history that indicate the quantity limits were intended to apply only to people who voluntarily participate in the identification program. Here is an example of such a statement: "Nothing in this Act shall amend or change Proposition 215, nor prevent patients from providing a defense under Proposition 215 for their possession or cultivation of amounts of marijuana exceeding the limits in this article, whether or not they qualify for the exceptions in Section[] 11362.77(b) or (c). The limits set forth in Section 11362.77(a) only serve to provide immunity from arrest for patients taking part in the voluntary ID card program, they do not change Section 11362.5 (Proposition 215), which limits a patient's possession or cultivation of marijuana to that needed for `personal medical purposes.'" (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Sen. Bill No. 420 (2003-2004 Reg. Sess.) as amended Sept. 9, 2003, pp. 6-7.)
Such expressions of legislative intent in the MMP's drafting history cannot be relied on to contradict the plain, express meaning of a statute clear on its face. "While certain legislative reports may be indicative of legislative intent [citation], `they cannot be used to nullify the language of the statute as it was in fact enacted.' [Citation.] Nor can the understanding of individual legislators who cast their votes in favor of a measure be used for this purpose. [Citation.]" (Planned Parenthood Affiliates v. Swoap (1985) 173 Cal.App.3d 1187, 1193 [219 Cal.Rptr. 664].)
Moreover, even if we assumed that section 11362.77 applies only to voluntary cardholders, it was, in this case, applied to defendant, a noncardholder.
[8] Article II, section 10, subdivision (c), of the California Constitution provides: "The Legislature may amend or repeal referendum statutes. It may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without their approval."
[9] Nevertheless, the CUA does not give patients a free pass to possess unlimited quantities of marijuana. (People v. Trippet (1997) 56 Cal.App.4th 1532, 1549 [66 Cal.Rptr.2d 559].) Rather, the "rule should be that the quantity possessed by the patient or the primary caregiver, and the form and manner in which it is possessed, should be reasonably related to the patient's current medical needs." (Ibid.)
[10] The Budget Act provision was struck down under the single subject rule of section 9 of article IV of the California Constitution. The analysis of what constitutes an amendment is the same as under section 10 of article II.
[11] Section 11362.77 would have also provided: "(b)(1) A person with an identification card or a primary caregiver with an identification card shall not be subject to arrest for possessing eight ounces or less of dried marijuana per person with an identification card, and maintaining six or fewer mature or 12 or fewer immature marijuana plants per person with an identification card. [¶] (2) Nothing in this section is intended to affect any city or county guidelines to the extent that the amounts contained in those guidelines exceed the quantities set forth in paragraph (1). [¶] (c) If a physician determines that the quantities specified in subdivision (b) do not meet the medical needs of the person with an identification card, that person or that person's primary caregiver with an identification card may possess an amount of marijuana consistent with those medical needs and shall not be subject to arrest for possessing that amount. [¶] (d) Only the dried mature processed flowers of female cannabis plant or the plant conversion shall be considered when determining allowable quantities of marijuana under this section. [¶] (e) The Attorney General may recommend modifications to the possession or cultivation limits set forth in this section. These recommendations, if any, shall be made to the Legislature no later than December 1, 2005, and may be made only after public comment and consultation with interested organizations, including, but not limited to, patients, health care professionals, researchers, law enforcement, and local governments. Any recommended modification shall be consistent with the intent of this article and shall be based on currently available scientific research." (Sen. Bill No. 1494 (2003-2004 Reg. Sess.) § 2.)
[12] The MMP has a severability clause: "If any section, subdivision, sentence, clause, phrase, or portion of this article is for any reason held invalid or unconstitutional by any court of competent jurisdiction, that portion shall be deemed a separate, distinct, and independent provision, and that holding shall not affect the validity of the remaining portion thereof." (§ 11362.82.)
[*] See footnote, ante, page 124.