Filed 11/19/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D075787 |
| Petitioner, | |
| v. | (Super. Ct. No. CR61365) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| ALLEN GOODEN, | |
| Real Party in Interest. | |
| THE PEOPLE, | D075790 |
| Petitioner, | |
| v. | (Super. Ct. No. CR105918) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| MARTY DOMINGUEZ, | |
| Real Party in Interest. | |

Original consolidated proceedings in mandate challenging order of the Superior Court of San Diego County, Louis R. Hanoian, Judge. Petitions denied.

Summer Stephan, District Attorney, Mark A. Amador, Linh Lam and Christine Bannon, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Angela Bartosik, Randy Mize, Chief Deputy Public Defenders, Robert Ford and Troy A. Britt, Deputy Public Defenders, for Real Parties in Interest.

Xavier Becerra, Attorney General, Thomas S. Patterson, Assistant Attorney General, Tamar Pachter and Nelson R. Richards, Deputy Attorneys General, as Amicus Curiae on behalf of Real Parties in Interest, upon the request of the Court of Appeal.

I

INTRODUCTION

In 2018, the Legislature passed and the Governor signed into law Senate Bill No. 1437 (Senate Bill 1437), legislation that prospectively amended the mens rea requirements for the offense of murder and restricted the circumstances under which a person can be liable for murder under the felony-murder rule or the natural and probable consequences doctrine. (Stats. 2018, ch. 1015.) Senate Bill 1437 also established a procedure permitting certain qualifying persons who were previously convicted of felony murder or murder under the natural and probable consequences doctrine to petition the courts that sentenced them to vacate their murder convictions and obtain resentencing on any remaining counts. (*Id.*, § 3.)

Real parties in interest were convicted of murder and petitioned for vacatur of their convictions and resentencing under the procedures established by Senate Bill 1437. The People moved to dismiss the petitions on grounds that Senate Bill 1437, which the voters did not approve, invalidly amended Proposition 7 (Prop. 7, as approved by voters, Gen. Elec. (Nov. 7, 1978); Proposition 7) and Proposition 115 (Prop. 115, as approved by voters, Primary Elec. (June 5, 1990); Proposition 115), voter initiatives that increased the punishments for murder and augmented the list of predicate offenses for first degree felony-murder liability, respectively. The trial court rejected the People's argument and denied the motions to dismiss. The People filed petitions for writs of mandate and/or prohibition in our court, asking us to direct the trial court to vacate its order denying the motions to dismiss and enter a new order granting the motions.

Like the trial court, we conclude Senate Bill 1437 was not an invalid amendment to Proposition 7 or Proposition 115 because it neither added to, nor took away from, the initiatives. Therefore, we deny the People's petitions for writ relief.

II

BACKGROUND

A

In 2018, the Legislature enacted and the Governor signed Senate Bill 1437, effective January 1, 2019. (Stats. 2018, ch. 1015.) An uncodified section of the law expressing the Legislature's findings and declarations states the law was "necessary to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the

3

actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (*Id.*, § 1, subd. (f).) It further provides that the legislation was needed "to limit convictions and subsequent sentencing so that the law of California fairly addresses the culpability of the individual and assists in the reduction of prison overcrowding, which partially results from lengthy sentences that are not commensurate with the culpability of the individual." (*Id.*, § 1, subd. (e).)

Under the felony-murder rule as it existed prior to Senate Bill 1437, a defendant who intended to commit a specified felony could be convicted of murder for a killing during the felony, or attempted felony, without further examination of his or her mental state. (*People v. Chun* (2009) 45 Cal.4th 1172, 1182 (*Chun*).) " 'The felony-murder rule impute[d] the requisite malice for a murder conviction to those who commit[ted] a homicide during the perpetration of a felony inherently dangerous to human life.' "[1] (*Id.* at p. 1184.) "The purpose of the felony-murder rule [was] to deter those who commit[ted] the enumerated felonies from killing by holding them strictly responsible for any killing committed by a cofelon, whether intentional, negligent, or accidental, during the perpetration or attempted perpetration of the felony." (*People v. Cavitt* (2004) 33 Cal.4th 187, 197.)

---

[1] Felony murder was designated as first degree murder if the predicate felony was enumerated in Penal Code section 189 and second degree murder if it was not specified in section 189, but was still inherently dangerous to human life. (*Chun, supra*, 45 Cal.4th at p. 1182.)

4

Independent of the felony-murder rule, the natural and probable consequences doctrine rendered a defendant liable for murder if he or she aided and abetted the commission of a criminal act (a target offense), and a principal in the target offense committed murder (a nontarget offense) that, even if unintended, was a natural and probable consequence of the target offense. (*People v. Chiu* (2014) 59 Cal.4th 155, 161–162.) " 'Because the nontarget offense [was] unintended, the mens rea of the aider and abettor with respect to that offense [was] irrelevant and culpability [was] imposed simply because a reasonable person could have foreseen the commission of the nontarget crime.' " (*People v. Flores* (2016) 2 Cal.App.5th 855, 867.)

Senate Bill 1437 restricted the application of the felony murder rule and the natural and probable consequences doctrine, as applied to murder, by amending Penal Code section 189,[2] which defines the degrees of murder. (Stats. 2018, ch. 1015, § 3.) Section 189, subdivision (e), as amended, provides that a participant in a specified felony is liable for murder for a death during the commission of the offense only if one of the following is proven: "(1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in

_____

[2] All further statutory references are to the Penal Code, unless otherwise noted.

5

the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life ...."[3]

Senate Bill 1437 also "added a crucial limitation" to section 188, the statutory provision that defines malice for purposes of murder. (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1099, review granted Nov. 13, 2019, S258175.) As amended, section 188 provides in pertinent part as follows: "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (*Id.*, subd. (a)(3).)

Finally, Senate Bill 1437 added section 1170.95 to the Penal Code. Section 1170.95 permits a person convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate the murder conviction and resentence the person on any remaining counts if the following conditions are met: "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine. [¶] (2) The petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder.

---

[3] Section 189, subdivision (e) does not apply when the victim is a peace officer who was killed while in the course of his or her duties, where the defendant knew or reasonably should have known that the victim was a peace officer engaged in the performance of his or her duties. (*Id.*, subd. (f).)

[¶] (3) The petitioner could not be convicted of first or second degree murder because of [the] changes to [s]ection 188 or 189 made effective January 1, 2019." (*Id.*, subd. (a).)

If the petitioner makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and, absent a waiver and stipulation by the parties, hold a hearing to determine whether to vacate the murder conviction, recall the sentence, and resentence the petitioner. (§ 1170.95, subds. (c) & (d)(1).) At the resentencing hearing, the parties may rely on the record of conviction or offer new or additional evidence, and the prosecution bears the burden of proving beyond a reasonable doubt the petitioner is ineligible for resentencing. (*Id.*, subd. (d)(3).)

If the petitioner is found eligible for relief, the murder conviction must be vacated and the petitioner resentenced "on any remaining counts in the same manner as if the petitioner had not been [*sic*] previously been sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).) If the petitioner is found eligible for relief, but "murder was charged generically[] and the target offense was not charged," the petitioner's murder conviction must be "redesignated as the target offense or underlying felony for resentencing purposes." (*Id.*, subd. (e).)

The Legislature passed Senate Bill 1437 by a two-thirds vote in the Senate and a less-than-two-thirds majority in the Assembly.

B

Real parties in interest Allen Gooden and Marty Dominguez were convicted of murder in unrelated proceedings. Gooden was convicted of first degree felony murder in 1982 for the death of a neighbor during a burglary. He was sentenced to 25 years to life

7

for the murder conviction. Dominguez was found guilty of second degree murder in 1990 after a companion killed a pedestrian under facts suggesting the jury may have relied on the natural and probable consequence doctrine. He was sentenced to 15 years to life for the murder conviction. Real parties in interest filed petitions under section 1170.95 requesting vacatur of their murder convictions and resentencing.

The People moved to dismiss the petitions on grounds that Senate Bill 1437, which voters did not approve, impermissibly amended two voter-approved initiatives, Proposition 7 and Proposition 115. According to the People, these alleged amendments violated article II, section 10, subdivision (c) of the California Constitution, which states in pertinent part as follows: "The Legislature may amend or repeal an initiative statute by another statute that becomes effective only when approved by the electors unless the initiative statute permits amendment or repeal without the electors' approval."[4]

Proposition 7, commonly known as the Briggs Initiative, increased the punishment for first degree murder from a term of life imprisonment with parole eligibility after seven years to a term of 25 years to life. (Prop. 7, §§ 1–2.) It increased the punishment for second degree murder from a term of five, six, or seven years to a term of 15 years to life. (*Ibid*.) Further, it amended section 190.2 to expand the special circumstances under which a person convicted of first degree murder may be punished by death or life

---

[4] In the trial court, the People argued section 1170.95 violates the separation of powers doctrine and The Victim's Bill of Rights Act of 2008, commonly known as Marsy's Law. The People do not pursue these arguments on appeal. However, we have considered and rejected these arguments in a companion case issued concurrently herewith. (*People v. Lamoureux* (Nov. 19, 2019, D075794) __Cal.App.5th __.)

imprisonment without the possibility of parole (LWOP). (*Id.*, §§ 5–6.) Proposition 7 did not authorize the Legislature to amend or repeal its provisions without voter approval.

Proposition 115, known as the "Crime Victims Justice Reform Act," amended section 189, among other statutory and constitutional provisions. It amended section 189 to add kidnapping, train wrecking, and certain sex offenses to the list of predicate offenses giving rise to first degree felony-murder liability. (Prop. 115, § 9.) Proposition 115 authorized the Legislature to amend its provisions, but only by a two-thirds vote of each house. (*Id.*, § 30.)

The trial court consolidated real party in interests' cases and denied the motions. The court found Senate Bill 1437 did not amend Proposition 7 because it did "not reduce sentences for first or second degree-murder." Further, the court found Senate Bill 1437 did not amend Proposition 115 because it did not "in any way modif[y]" the predicate offenses on which first degree felony-murder liability may be based. Therefore, the court found Senate Bill 1437 was not an invalid legislative amendment.

The People filed petitions for writs of mandate and/or prohibition in our court, requesting us to direct the trial court to vacate its order and enter a new order granting the motions. We issued orders to show cause why the requested relief should not be granted and consolidated the appellate proceedings. At our request, the Attorney General filed an amicus curiae brief on the issues presented in the petitions. In its brief, the Attorney General urged us to deny the People's petitions on grounds that Senate Bill 1437 did not amend Proposition 7 or Proposition 115.

9

III

DISCUSSION

A

Under article II, section 10 of the California Constitution, a statute enacted by voter initiative may be amended or repealed by the Legislature only with the approval of the electorate, unless the initiative statute provides otherwise. (Cal. Const., art. II, § 10, subd. (c).) The purpose of this limitation is to " ' "protect the people's initiative powers by precluding the Legislature from undoing what the people have done, without the electorate's consent." ' " (*People v. Kelly* (2010) 47 Cal.4th 1008, 1025 (*Kelly*).)

An issue that often arises in litigation involving the constitutionality of a legislative enactment under article II, section 10 of the California Constitution is whether the legislative enactment in question in fact amends an initiative statute. Our Supreme Court has described an amendment as " 'a legislative act designed to change an existing initiative statute by adding or taking from it some particular provision.' "[5] (*Pearson*, *supra*, 48 Cal.4th at pp. 570–571; *Kelly*, *supra*, 47 Cal.4th at pp. 1026–1027 ["[F]or purposes of article II, section 10, subdivision (c), an amendment includes a legislative act

---

[5] Citing language used by the Courts of Appeal in *Proposition 103 Enforcement Project v. Quackenbush* (1998) 64 Cal.App.4th 1473, and *Mobilepark West Homeowners Association v. Escondido Mobilepark West* (1995) 35 Cal.App.4th 32, the People contend legislation amends an initiative statute whenever it alters the "scope or effect" of the initiative statute. However, the Supreme Court has declined to "endorse such an expansive definition," which "in some respects conflicts with the language" the Supreme Court has applied in its decisions. (*Kelly*, *supra*, 47 Cal.4th at p. 1026, fn. 19; see *People v. Superior Court (Pearson)* (2010) 48 Cal.4th 564, 570–571 (*Pearson*).) Without addressing the viability of the definitions discussed in the *Quackenbush* and *Mobilepark* decisions, we will apply the definition of amendment endorsed by our Supreme Court.

that changes an existing initiative statute by taking away from it."].)  When confronted with the task of determining whether legislation amends a voter initiative, the Supreme Court has asked the following question:  "[W]hether [the legislation] prohibits what the initiative authorizes, or authorizes what the initiative prohibits."  (*Pearson*, at p. 571; see *People v. Cooper* (2002) 27 Cal.4th 38, 47 (*Cooper*).)

In undertaking this analysis, the Supreme Court has cautioned that not all legislation concerning "the same subject matter as an initiative, or event augment[ing] an initiative's provisions, is necessarily an amendment" to the initiative.  (*Pearson*, *supra*, 48 Cal.4th at p. 571.)  On the contrary, " '[t]he Legislature remains free to address a " 'related but distinct area' " [citations] or a matter that an initiative measure "does not specifically authorize *or* prohibit." ' "  (*Ibid.*; see also *Cooper*, *supra*, 27 Cal.4th at p. 47; *County of San Diego v. San Diego NORML* (2008) 165 Cal.App.4th 798, 830.)

B

This appeal turns on whether Senate Bill 1437 amended Proposition 7 or Proposition 115 under the standards just discussed.  If Senate Bill 1437 amended one or both initiatives, as the People contend, Senate Bill 1437 violates article II, section 10, subdivision (c) of the California Constitution because it was not approved by the voters (or for purposes of the alleged amendments to Proposition 115, two-thirds of each legislative house).  However, if Senate Bill 1437 did not amend either initiative, as the real parties in interest and Attorney General claim, there is no constitutional violation.

11

1

a

We begin with whether Senate Bill 1437 amended Proposition 7. To resolve this question, we must determine what the voters contemplated when they enacted the initiative. (*Pearson*, *supra*, 48 Cal.4th at p. 571.) "We first consider the initiative's language, giving the words their ordinary meaning and construing this language in the context of the statute and initiative as a whole. If the language is not ambiguous, we presume the voters intended the meaning apparent from that language, and we may not add to the statute or rewrite it to conform to some assumed intent not apparent from that language. If the language is ambiguous, [we] may consider ballot summaries and arguments in determining the voters' intent and understanding of a ballot measure." (*Ibid.*)

Therefore, we start with the express language of Proposition 7. In pertinent part, the initiative provided as follows: "Every person guilty of murder in the first degree shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life …. [¶] Every person guilty of murder in the second degree shall suffer confinement in the state prison for a term of 15 years to life." (Prop. 7, § 2.) Additionally, the initiative expanded the special circumstances which can subject a person convicted of first degree murder to a punishment of death or LWOP. (*Id.*, §§ 5–6.) Each of these provisions increases the possible punishments for the offense of murder. From the language of Proposition 7,

12

therefore, it is apparent voters approved the initiative to enhance punishments for persons who have been convicted of murder.

The People contend Senate Bill 1437—which, as noted *ante*, amended the mens rea requirements for the offense of murder—"effectively change[d] the penalties for murder," and therefore "took away" from Proposition 7, "by changing the very definitions [of murder] relied upon by the voters …."  In so doing, the People conflate two distinct concepts—the elements of murder and the punishment imposed for murder.  The elements of an offense and punishment are, as all parties seemingly agree, closely and historically related.  Indeed, for a crime to exist, there must exist both a prohibited act and punishment.  (§ 15 [a crime is an "act committed or omitted in violation of a law forbidding or commanding it, and to which is annexed, upon conviction … [a] punishment[]"]; *People v. Vasilyan* (2009) 174 Cal.App.4th 443, 449–450 ["That there must be a substantive crime and a punishment for that crime in order to constitute a criminal offense has been long recognized."]; see *Alleyne v. United States* (2013) 570 U.S. 99, 106 [recognizing the "historic link between crime and punishment"].)

However, the elements of an offense and the punishment for an offense plainly are not synonymous.  (*People v. Anderson* (2009) 47 Cal.4th 92, 119 ["A ... penalty provision is not an element of an offense …."]; see *People v. Banks* (2015) 61 Cal.4th 788, 801 [" '[T]he definition of crimes generally has not been thought automatically to dictate what should be the proper penalty.' "].)  " 'Every crime consists of a group of elements laid down by the statute or law defining the offense and every one of these elements must exist or the statute is not violated.  This group of essential elements is known as the

13

"corpus delicti," the body or the elements of the crime.' " (*Anderson*, at p. 101.)
Punishment, however, " 'has always meant a "fine, penalty, or confinement inflicted upon
a person by the authority of the law and the judgment and sentence of a court, for [the]
crime or offense committed by him." ' " (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1107.)  In
other words, a punishment is the consequence of a finding of guilt intended to further the
public policy goals of retribution and deterrence.  (*Ibid*.)

As discussed *ante*, the language of Proposition 7 demonstrates the electorate
intended the initiative to increase the punishments, or consequences, for persons who
have been convicted of murder.  Senate Bill 1437 did not address the same subject
matter.  It did not prohibit what Proposition 7 authorizes by, for example, prohibiting a
punishment of 25 years to life for first degree murder or 15 years to life for second degree
murder.  Nor did it authorize what Proposition 7 prohibits by, for instance, permitting a
punishment of less than 25 years for first degree murder or less than 15 years for second
degree murder.  In short, it did not address punishment at all.  Instead, it amended the
mental state requirements for murder, which "is perhaps as close as one might hope to
come to a core criminal offense 'element.' " (*Apprendi v. New Jersey* (2000) 530 U.S.
466, 493.)

Thus, Senate Bill 1437 presents a classic example of legislation that addresses a
subject related to, but distinct from, an area addressed by an initiative.  (*Kelly*, *supra*, 47
Cal.4th at pp. 1025–1026; see *Pearson*, *supra*, 48 Cal.4th at pp. 572–573 [legislation
allowing postconviction discovery addressed area related to, but distinct from, initiative
governing pretrial discovery]; *Cooper*, *supra*, 27 Cal.4th at pp. 46–47 [legislation

14

limiting availability of presence conduct credits for offenders did not amend Briggs Initiative provision authorizing postsentence conduct credits]; *Knight v. Superior Court* (2005) 128 Cal.App.4th 14, 27 (*Knight*) [legislation according rights and responsibilities for domestic partners did not amend initiative limiting marriage to persons of the opposite sex].)  The Legislature is free to enact such legislation without voter approval. (*Kelly*, at p. 1025.)

The People concede Proposition 7 addressed "the penalties for murder," not the elements of murder.  However, they claim the electorate intended its voter-approved penalties to apply to murder as the offense was understood at the time Proposition 7 was passed, not as murder may later be defined based on subsequent legislative changes. They point to language in the initiative indicating the increased punishments were for persons convicted of "murder in the first-degree" and "murder in the second-degree," and claim these terms specifically incorporated by reference the then-existing definitions of first and second degree murder, as interpreted by statute and judicial authorities.  In support of this argument, they rely on a tool of statutory construction discussed in *Palermo v. Stockton Theatres, Inc.* (1948) 32 Cal.2d 53 (*Palermo*), which provides: "[W]here a statute adopts by specific reference the provisions of another statute, regulation, or ordinance, such provisions are incorporated in the form in which they exist at the time of the reference and not as subsequently modified …."  (*Id.* at pp. 58–59.)

We do not find this rule applicable here.  Instead, we believe a cognate rule discussed in the *Palermo* decision is more apt under the circumstances:  "[W]here the reference is general instead of specific, such as a reference to a system or body of laws or

15

to the general law relating to the subject in hand, the referring statute takes the law or laws referred to not only in their contemporary form, but also as they may be changed from time to time …."  (*Palermo*, *supra*, 32 Cal.2d at p. 59.)

The Supreme Court decision of *People v. Hernandez* (2003) 30 Cal.4th 835, is instructive.  There, the defendant was convicted of conspiracy to commit murder and sentenced under a statute, enacted in 1955, which provided as follows:  " '[T]he punishment [for conspiracy to murder] shall be that *prescribed for murder in the first degree*.' "  (*Id.* at p. 864.)  The *Hernandez* court considered whether the statutory reference to punishment " 'prescribed for murder in the first degree' " was intended to fix the penalty permanently at the punishment for first degree murder as it existed in 1955, when the conspiracy statute was enacted, or whether it was intended to account for subsequent changes in the penalty for first degree murder.  (*Id.* at pp. 864–865.)  It concluded the reference was general and therefore not intended to freeze the punishment for first degree murder as it existed in 1955.  (*Id.* at p. 865.)  We find the *Hernandez* court's analysis applicable in this case, given the clear similarities between the language at issue here (" 'murder in the first degree' " and "murder in the second degree") and the language considered in the *Hernandez* decision (punishment " 'prescribed for murder in the first degree' ").  (*Id.* at pp. 864, 865.)

Additionally, we note that Proposition 7 did not identify specific provisions of the Penal Code pertaining to the offense of murder, as opposed to the punishments for murder.  If the drafters of Proposition 7 had intended to incorporate the definition of murder as the offense was understood in 1978, we expect the initiative, at minimum,

16

would have cited or referred to the statutory provisions defining murder (§ 187), malice (§ 188), or the degrees of murder (§ 189). (*People v. Jones* (1995) 11 Cal.4th 118, 123 [statute cited Penal Code provision "all but expressly … [b]ut that [did] not effect adoption by specific reference"]; cf. *In re Oluwa* (1989) 207 Cal.App.3d 439, 445 [statute incorporated Penal Code article through "specific and pointed reference"].) However, it did not, which suggests the voters did not intend to freeze the definition of murder in place as it existed in 1978.

Further, Proposition 7 did not include any time-specific limitations when referring to first or second degree murder, as we might expect if the voters had intended to permanently wall off the definition of murder from future consideration by the Legislature. (*Doe v. Saenz* (2006) 140 Cal.App.4th 960, 981 [reference to statute was general, not specific, where it did not incorporate statute in a "time-specific way"]; *Sneed v. Saenz* (2004) 120 Cal.App.4th 1220, 1238 [same].) For example, Proposition 7 did not state, "Every person guilty of murder in the first degree, *as that offense is presently defined by statute and judicial authorities*, shall suffer death, confinement in state prison for life without possibility of parole, or confinement in the state prison for a term of 25 years to life." It is not our role to rewrite the initiative by inserting language the drafters never included and the voters never considered. (*People v. Guzman* (2005) 35 Cal.4th 577, 587 [" '[I]nsert[ing]' additional language into a statute 'violate[s] the cardinal rule of statutory construction that courts must not add provisions to statutes.' "]; see § 1858.) For all these reasons, we reject the People's argument that Proposition 7 specifically incorporated, thereby freezing in place, the definition of murder as it existed in 1978.

17

b

"Since the language of the initiative is unambiguous, we need not look to other indicia of the voters' intent." (*Knight*, *supra*, 128 Cal.App.4th at p. 25.) To the extent the ballot materials are relevant, however, they do not support the People's contention that Senate Bill 1437 thwarted the voters' intent in passing Proposition 7.

The Analysis prepared by the Legislative Analyst described Proposition 7 as follows: "**Background:** [¶] Under existing law, a person convicted of *first degree murder* can be punished in one of three ways: (1) by death, (2) by a sentence of life in prison without the possibility of parole, or (3) by a life sentence with the possibility of parole, in which case the individual would become eligible for parole after serving seven years. A person convicted of *second degree murder* can be sentenced to 5, 6, or 7 years in prison…. [¶] **Proposal:** [¶] This proposition would (1) increase the penalties for first and second degree murder, (2) expand the list of special circumstances requiring a sentence of either death or life imprisonment without the possibility of parole, and (3) revise existing law relating to mitigating and aggravating circumstances." (Ballot Pamp., Gen. Elect. (Nov. 7, 1978), analysis by Legis. Analyst, at p. 32 (Ballot Pamphlet).)

In the portion of the ballot materials presenting the argument in favor of Proposition 7, proponents urged voters to approve the initiative because "the people ha[d] been demanding a tough, effective death penalty law to protect our families from ruthless killers. But, every effort to enact such a law ha[d] been thwarted by powerful anti-death penalty politicians in the State Legislature. [¶] In August of 1977, when the public

18

outcry for a capital punishment law became too loud to ignore, the anti-death penalty politicians used their influence to make sure that the death penalty law passed by the State Legislature was as weak and ineffective as possible. [¶] That is why 470,000 concerned citizens signed petitions to give [voters] the opportunity to vote on this new, tough death penalty law." (Ballot Pamphlet, argument in favor of Prop. 7, p. 34.)

These materials all concern the issue of punishment. By contrast, they are silent on the critical issues addressed by Senate Bill 1437. They do not mention the mens rea element of murder or any other requirement necessary for a person to be liable for murder. They do not mention sections 187 (defining murder), 188 (defining malice), or 189 (defining the degrees of murder). Further, they do not discuss the felony-murder rule or the natural and probable consequences doctrine. These ballot materials buttress our conclusion that voters intended Proposition 7 to strengthen the punishments for persons convicted of murder, not to reaffirm or amend the substantive offense of murder.

The legislative history of Senate Bill 1437 does not assist the People either. The People note that the Office of Legislative Counsel sent an opinion letter to Assemblymember Jim Cooper, dated June 20, 2018, in which it purportedly advised that Senate Bill 1437 was an invalid amendment to Proposition 7. However, as real parties in interest explain, there is some uncertainty as to whether the letter—which did not identify by title the pending legislation on which the Office of Legislative Counsel was commenting—pertained to Senate Bill 1437 or, alternatively, Assembly Bill No. 3104, a bill that was not enacted, but would have amended Penal Code sections 189, 190, and 190.2, among others, if it had passed.

19

We need not resolve this uncertainty because, even assuming the letter pertained to Senate Bill 1437, opinions of the Office of Legislative Counsel, while entitled to considerable weight, are not binding. (*Mundy v. Superior Court* (1995) 31 Cal.App.4th 1396, 1404.) Here, the two-page Office of Legislative Counsel's letter was not persuasive, as it defined a legislative amendment in a manner our Supreme Court has never endorsed (using the *Quackenbush* definition of amendment discussed *ante*). Further, it gave no consideration to the differences between the elements of a crime and the punishment for a crime. It also did not address whether the references in Proposition 7 to "first degree murder" and "second degree murder" were specific or general under the *Palermo* rule of statutory construction. For all these reasons, we do not find the letter persuasive. (See *St. John's Well Child & Family Child Center v. Schwarzenegger* (2010) 50 Cal.4th 960, 982.)

c

Finally, the People contend that irrespective of whether the Legislature may make prospective changes to the offense of murder, it may not retroactively "allow[] someone who was convicted of murder, lawfully and as a matter of historical fact, to secure a sentence less than that mandated in section 190 when they were convicted by eliminating their sentence altogether." Therefore, they argue the resentencing procedure established by section 1170.95 violates Proposition 7, even if the remainder of Senate Bill 1437 does not.

The People's constitutional attack on the resentencing procedure established in section 1170.95 assumes a petitioner's murder conviction is fixed and the resentencing

20

procedure merely provides an avenue by which a petitioner may obtain a more lenient sentence for the extant conviction.  However, that is not the case.  The effect of a successful petition under section 1170.95 " ' "is to vacate the judgment … as if no judgment had ever been rendered." ' "  (*People v. Martinez* (2017) 10 Cal.App.5th 686, 718; cf. *People v. Sumstine* (1984) 36 Cal.3d 909, 920 ["When the issuance of a writ of habeas corpus vacates the underlying judgment of conviction, the judgment ceases to exist for all purposes."].)  Thus, the resentencing procedure established by section 1170.95—like the remainder of the statutory changes implemented by Senate Bill 1437—does not amend Proposition 7.

### d

In sum, the voters who enacted Proposition 7 considered and approved increased punishments for persons convicted of murder, including additional means by which such persons could be punished by death or LWOP.  However, the text of the initiative and the ballot materials for the initiative do not demonstrate an intent to freeze the substantive elements of murder in place as they existed in 1978.  Therefore, Senate Bill 1437—which did not address the issue of punishments for persons convicted of murder—cannot be considered an amendment to Proposition 7.

### 2

We turn now to whether Senate Bill 1437 amended Proposition 115.  For many of the same reasons discussed *ante*, we conclude the issues addressed by Senate Bill 1437 are distinct from the subject matter of Proposition 115.  Therefore, we agree with the real

21

parties in interest and Attorney General that Senate Bill 1437 did not amend Proposition 115.

As noted, Proposition 115 added kidnapping, train wrecking, and certain sex offenses to the list of predicate felonies giving rise to first degree felony-murder liability. (Prop. 115, § 9.) Because Proposition 115 altered the circumstances under which a person may be liable for murder, Senate Bill 1437—which likewise changed the conditions under which a person may be liable for murder—indisputably addresses a matter related to the subject considered by voters. However, as our Supreme Court has cautioned, that alone does not render the Legislature's actions invalid. (*Kelly*, *supra*, 47 Cal.4th at p. 1025.) Instead, the question we must ask ourselves is whether Senate Bill 1437 addresses a matter that the initiative specifically authorizes or prohibits. (*Ibid.*)

We conclude it does not. Senate Bill 1437 did not augment or restrict the list of predicate felonies on which felony murder may be based, which is the pertinent subject matter of Proposition 115.[6] It did not address any other conduct which might give rise to a conviction for murder. Instead, it amended the mental state necessary for a person to be liable for murder, a distinct topic not addressed by Proposition 115's text or ballot materials.

The People do not contend otherwise. Instead, they emphasize that Proposition 115 reenacted section 189 in full. Because the initiative reenacted section 189 in full,

---

[6]    In addition to augmenting the list of predicate felonies for first degree felony murder, Proposition 115 amended numerous constitutional and statutory provisions that, according to the People, are not at issue here.

22

they argue the following language from Proposition 115 precludes the Legislature from amending, by simple majority, *any* portion of section 189, even those portions of section 189 that the initiative did not change in any substantive way: "*The statutory provisions contained in this measure may not be amended by the Legislature* except by statute passed in each house by rollcall vote entered in the journal, two-thirds of the membership concurring, or by a statute that becomes effective only when approved by the electors." (Prop. 115, § 30, italics added.) We disagree.

Under article IV, section 9 of the California Constitution, a statute must be reenacted in full as amended if any part of it is amended. (Cal. Const., art. IV, § 9.) "The rationale for compelling reenactment of an entire statutory section when only a part is being amended is to avoid ' "the enactment of statutes in terms so blind that legislators themselves [are] … deceived in regard to their effect" ' and the risk that ' "the public, from the difficulty of making the necessary examination and comparison, [will] fail[] to become appr[]ised of the changes made in the laws." ' [Citation.] Consequently, a substantial part of almost any statutory initiative will include a restatement of existing provisions with only minor, nonsubstantive changes—or no changes at all." (*County of San Diego v. Commission on State Mandates* (2018) 6 Cal.5th 196, 208 (*Commission*).)

In view of this constitutional mandate, the Supreme Court has rejected the claim the People present here. In *Commission*, voters approved an initiative: (1) reenacting an existing statutory section, including provisions with minor changes or no changes (to comply with Cal. Const., art. IV, § 9); and (2) limiting future legislative enactments to the initiative, unless approved by voters or two-thirds of each house in the Legislature (as

23

permitted by Cal. Const., art. II, § 10, subd. (c)). (*Commission*, *supra*, 6 Cal.5th at p. 211.) The Supreme Court rejected an argument claiming the limiting language categorically precluded the Legislature from amending those portions of the existing statutory section that were reenacted in the ballot measure without substantive change. (*Id.* at pp. 214–215.) As the court explained, a contrary holding would "unduly burden the people's willingness to amend existing laws by initiative," and would not "comport[] with the Legislature's ability to change statutory provisions outside the scope of the existing provisions voters plausibly had a purpose to supplant through an initiative." (*Id.* at p. 214.) Thus, the court concluded: "When technical reenactments are required under article IV, section 9 of the Constitution—yet involve no substantive change in a given statutory provision—the Legislature in most cases retains the power to amend the restated provision through the ordinary legislative process." (*Ibid*.)

As in *Commission*, the initiative in question restates a statutory provision in full (§ 189) to comply with constitutional mandates. Further, as noted *ante*, there are no indicia in the language of the initiative or its ballot materials indicating the voters intended to address any provision of section 189, except the list of predicate felonies for purposes of the felony-murder rule. Therefore, we conclude the limiting language in Proposition 115, like the limiting language in *Commission*, does not preclude the Legislature from amending provisions of the reenacted statute that were subject to

24

technical restatement to ensure compliance with article IV, section 9 of the California Constitution.[7]

### 3

In closing, we reiterate a bedrock principle underpinning the rule limiting legislative amendments to voter initiatives: "[T]he voters should get what they enacted, not more and not less." (*Hodges v. Superior Court* (1999) 21 Cal.4th 109, 114.) Here, the voters who approved Proposition 7 and Proposition 115 got, and still have, precisely what they enacted—stronger sentences for persons convicted of murder and first degree felony-murder liability for deaths occurring during the commission or attempted commission of specified felony offenses. By enacting Senate Bill 1437, the Legislature has neither undermined these initiatives nor impinged upon the will of the voters who passed them.

---

7    The People argue the *Commission* decision is distinguishable because the limiting language in the initiative considered in *Commission* (" 'The provisions of this act shall not be amended by the Legislature,' " *Commission*, *supra*, 6 Cal.5th at p. 211), differs from the limiting language used in Proposition 115 ("The statutory provisions contained in this measure may not be amended by the Legislature," Prop. 115, § 30). We disagree and, therefore, ascribe no significance to these minor differences.

## IV

## DISPOSITION

The petitions are denied.

McCONNELL, P.J.

I CONCUR:

IRION, J.

O'Rourke, J., dissenting.

I respectfully dissent.  For the reasons expressed in my dissent in *People v Lamoureux* (Nov. 19, 2019, D075794) __Cal.App.5th __, filed concurrently herewith, I would grant the People's petition.

O'ROURKE, J.